## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 08-CR-123-TCK** |
| | ) | |
| MARQUIS CRAVEN, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court is the government's Motion for Revocation of Release Order and Memorandum in Support (Dkt. # 11). On July 18, 2008, a detention hearing was held before Magistrate Judge Sam A. Joyner and he ordered that defendant be released on a $50,000 bond, along with other conditions, to assure defendant's presence at court hearings and the safety of the community. Dkt. # 10. The government has moved for revocation of the release order.

### I.

On July 11, 2008, Marquis Craven was charged with one count of possessing an unregistered sawed-off shotgun in violation of 26 U.S.C. §§ 5841, 5845(a), 5861(d), and 5871. The government moved for detention of defendant pending trial on the basis of the charged crime of violence and that release of the defendant would create a serious danger to the safety of other persons or the community and requested a detention hearing. Dkt. ## 4, 5. Defendant was arraigned on July 15, 2008 and the Court appointed counsel for defendant. The Court ordered that defendant be held in temporary pretrial detention pending a hearing on the government's motion, and a detention hearing was set for July 18, 2008.

At the detention hearing, the government presented the testimony of Alcohol, Tobacco, and Firearms ("ATF") Special Agent Peggy Trice.  Special Agent Trice discussed defendant's prior criminal history, the circumstances leading to his arrest on a federal gun charge, and the evidence seized during a police search of his grandfather's residence on April 24, 2008.  Defendant called his grandfather, Olzie Craven, to testify on his behalf.  Olzie Craven testified that defendant lives with him and he believes that defendant has not committed a crime during the last two months. Defendant's uncle, Jon Craven, testified that he helped defendant find a job at Go Fit in early July 2008 and defendant works from 6:00 a.m. to 2:00 p.m. on work days.  However, he does not know how defendant spends his time outside of work and he is concerned that many teenagers hang out at Olzie Craven's house.[1]  Defendant's girlfriend, Shamelle Melton a/k/a "Molly," testified that she has a one-month old daughter and defendant is the child's father.  She stated that defendant once gave her diapers and clothes for the child.  After questioning by the magistrate judge, she also admitted that she is aware that defendant is expecting a child with Destiny Dixon and the child is due in September 2008.

The magistrate judge found that this was a close decision on the issue of pretrial detention. Even if he treated the charged offense as a crime of violence and applied a statutory presumption of detention, he determined that defendant should be released pending trial.  He ordered defendant to post a $50,000 signature bond, placed defendant in the third-party custody of his grandfather, and ordered defendant to submit to electronic monitoring.  The government asked the magistrate judge to stay his release order for 24 hours while the government considered whether it would appeal the

---

[1]     The parties have provided more detailed evidence about defendant's criminal history and his recent conduct, and the Court will discuss this evidence in greater detail when analyzing the statutory factors stated in 18 U.S.C. § 3142(g).

magistrate judge's order.  Because the detention hearing was held on a Friday, the magistrate judge

stayed his release order until Monday, July 21, 2008.[2]  The government filed a motion for revocation

of release order on July 21, 2008, and a hearing was set before the undersigned district judge on July

23, 2008.

## II.

Under 18 U.S.C. § 3145(a), the government may file a motion for revocation of a release

order if a criminal defendant has been released pending trial.  The Tenth Circuit requires this Court

to conduct de novo review of a magistrate judge's release order.  United States v. Cisneros, 328 F.3d

610, 616 n.1 (10th Cir. 2003).  A district court has the discretion to hold an evidentiary hearing if

it determines that additional evidence is necessary or it may rule on the written pleadings and

evidence if the factual record is sufficient.  United States v. King, 849 F.2d 485, 490-91 (11th Cir.

1988); United States v. Williams, 753 F.2d 329, 334 (4th Cir. 1985).  The government requested a

hearing on its motion, and a hearing was held on July 23, 2008.  The Court has reviewed the

audiorecording of the July 18, 2008 detention hearing before the magistrate judge, and the parties

have agreed that the Court may consider the evidence presented at that hearing.  At the hearing

before the undersigned, the parties agreed to present new evidence only.  That new evidence is

discussed in the analysis below.

---

[2]      Pursuant to LCrR 12.1(J), the prosecutor's announcement that the government intends to
appeal a release order results in an automatic stay of the release order until 9:30 a.m. the
following business day.  If the prosecutor files a written notice of appeal, the stay of the
release order continues until it is lifted by a district judge.

### III.

The government argues that the statutory factors favor pretrial detention of defendant, and the magistrate judge's release order should be revoked. To support detention, the government relies on the nature of the charged offense, defendant's lengthy criminal history, and his gang membership. Defendant admits that he has some criminal history, but he asserts that he has not engaged in criminal activity for the last two or three months and he has appeared at court hearings in state court. He claims that his family has helped him obtain work and a combination of release conditions will ensure defendant's appearance at court hearings and protect the community.[3]

The Bail Reform Act, 18 U.S.C. §§ 3141-3156, provides that "upon the appearance before a judicial officer of a person charged with an offense, the judicial officer shall issue an order that, pending trial, the person be released . . . or detained . . . ." Id. at § 3142(a). The government may move for detention of a defendant pending trial in cases involving a "crime of violence." Id. at § 3142(f). The Bail Reform Act defines a crime of violence as:

> (A) an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; [or]

> (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense . . . .

---

[3] Defense counsel argued that defendant posed a limited danger to the community because the federal government did not seek an indictment for almost two months after defendant's residence was searched on April 24, 2008. However, defendant has provided no authority for this argument and the Court does not believe that the amount of time between the execution of a search warrant and indictment is a reliable indication that defendant poses a minimal danger to the community. The Court will not consider this as a factor in its decision.

Id. at § 3156.  If the government files a motion requesting that a criminal defendant be detained pending trial, the Court must hold a hearing to determine if any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  Id. at § 3142(e).

Defendant concedes that the alleged offense is a crime of violence and the government has the right to request a detention hearing under § 3142(f).[4]  Under § 3142(g), the Court must "take into account the available information" concerning the following factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including --

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, of local law; and

(4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release.

---

[4]     Before the magistrate judge, the government argued that the classification of the charged offense created a rebuttable presumption of danger and flight risk.  However, the Tenth Circuit has held that classifying an offense as a crime of violence simply "entitl[es] the government to request a detention hearing . . . ."  United States v. Rogers, 371 F.3d 1225, 1227 n.1 (10th Cir. 2004).  The offense charged here does not fall under the three categories of cases with rebuttable presumptions.  See 18 U.S.C. § 3142(e).  Therefore, there is no rebuttable presumption in this case.

5

18 U.S.C. § 3142(g).  In order to detain a defendant pending trial, the judicial officer must find by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person or the community.  Id. at § 3142(f)(2).  The Court will consider each of the factors enumerated in the Bail Reform Act.

The Nature and Circumstances of the Offense

Defendant has been charged with possessing an unregistered sawed-off shotgun, and the government argues that the nature of the offense inherently poses a risk of danger to the community or other persons.  At the detention hearing before the magistrate judge, the government argued that a person would not possess a sawed-off shotgun unless he intended to conceal the weapon and he intended to harm another person.  The Court agrees that the type of weapon defendant allegedly possessed by defendant is a factor supporting pretrial detention.  The crime of which defendant is charged, possession of a sawed-off shotgun that has not been registered in the National Firearm Registration and Transfer Record,  is "targeted at specific weapons deemed to be particularly dangerous."  United States v. Dwyer, 245 F.3d 1168, 1172 (10th Cir. 2001); see also United States v. Fortes, 141 F.3d 1, 6 (1st Cir. 1998) (noting that "[o]nly those firearms . . . that Congress has found to be inherently dangerous and generally lacking usefulness, except for violent and criminal purposes, such as sawed-off shotguns and hand-grenades" must be registered).  Even if the charged offense does not create a presumption of danger, as argued by the government, the nature of the firearm seized from defendant supports a finding that defendant poses a danger to the community or other persons.

The Weight of the Evidence Against Defendant

The sawed-off shotgun was seized when a federal search warrant was executed at Olzie Craven's residence on April 24, 2008, and the gun was found under defendant's bed. Following the search, defendant voluntarily waived his Miranda rights and spoke to police. He initially denied ownership of the gun, but he subsequently admitted that the gun was his. Defendant's admission is certainly relevant evidence supporting the government's case that he possessed an unregistered sawed-off shotgun. Special Agent Trice has confirmed that the gun, a Mossberg, 12 guage, Model Maverick 88, shotgun, bearing Serial Number MV20604L, was not registered in the National Firearms Registration and Transfer Record and that the barrel of the gun is less than 18 inches in length. This constitutes substantial evidence in support of the government's case and weighs heavily against defendant's release.

History and Characteristics of the Defendant

The Bail Reform Act requires the Court to consider the history and characteristics of the individual defendant before making a decision on pretrial release or custody. Defendant has an extensive criminal record dating back to 2004. He has many convictions as a juvenile, including convictions for:

- Larceny from a Retailer (less than $50) -- Case No. JDL04-1592, Tulsa County, Oklahoma (guilty plea on February 22, 2005);

- Larceny from a Retailer (less than $500) -- Case No. JDL06-1220, Tulsa County, Oklahoma (guilty plea on January 10, 2007);

- Concealing Stolen Property (reduced from Burglary II) -- JDL06-1591, Tulsa County, Oklahoma (guilty plea on January 10, 2007);

- Trespassing (charge of possessing controlled dangerous substance was dismissed) -- Case No. JDL07-431, Tulsa County, Oklahoma (guilty plea on March 1, 2007);

- Burglary II of Business (2 counts), Resisting Arrest, Unlawful Wearing of Masks/Disguises -- Case No. JDL07-498, Tulsa County, Oklahoma (guilty plea on April 25, 2007);

- Trespassing -- Case No. JDL07-581, Tulsa County, Oklahoma (guilty plea on April 25, 2007); and

- Embezzlement -- Case No. JDL07-729, Tulsa County, Oklahoma (guilty plea on June 20, 2007).[5]

The government particularly focuses on the facts supporting defendant's conviction for resisting arrest. On March 23, 2007, defendant participated in a burglary at the Promenade Mall in Tulsa, Oklahoma at approximately 3:00 a.m. Police arrived on the scene and attempted to arrest defendant. Defendant struck a police officer in the chest and unsuccessfully attempted to escape. Defendant was originally charged with Assault and Battery on a Police Officer, but the charge was amended to Resisting Arrest. He has also been arrested or charged with the following offenses:

- Driving under Suspension and No Seatbelt or Insurance -- warrant issued on June 22, 2007 (disposition unknown);

- Failure to Appear-Speed not Reasonable -- warrant issued on March 6, 2008 (disposition unknown);

- Possession of Firearm after Juvenile Adjudication -- Case No. CF-08-1942, Tulsa County, Oklahoma (dismissed on May 21, 2008);[6]

---

[5] The government produced evidence that defendant stole approximately $4,700 while he was briefly employed by Target. Defendant was caught on surveillance cameras slipping money from cash registers to a person identified as Alex Andrews. At the July 23, 2008 hearing, Trice stated that Alex Andrews is a member of the 4 Deuce Gang.

[6] Defendant was arrested on April 20, 2008 on the charge of Possession of Firearm after Juvenile Adjudication, but the evidence supporting the federal gun charge was not seized until April 24, 2008. This charge stems from a separate incident. Defense counsel stated that defendant was walking towards a vehicle in which police found an AK-47 assault rifle and defendant was arrested for possession of the rifle. He states that the charge was dismissed due to insufficient evidence that defendant possessed the rifle.

- Concealing Stolen Property -- warrant issued on May 13, 2008 (disposition unknown);

- Resisting an Officer and Obstructing an Officer -- Case No. CM-08-990, Tulsa County, Oklahoma (charges pending); and

- Possession of Sawed-Off Shotgun, Possession of Firearm by Juvenile, Possession of Controlled Drug, and Knowingly Receiving/Concealing Stolen Property -- Case No. CF-08-2032, Tulsa County, Oklahoma (charges pending).[7]

The government highlights the pending charges against defendant resulting from a February 2, 2008 encounter with police. Police were investigating a shooting that occurred at the AMC Southroads 20 movie theater in Tulsa and attempted to locate a potential witness, Chris Fortinberry, in the area near 42nd Street North. When police officers located the witness, he appeared to be hiding something in his waistband and he ran into Olzie Craven's residence. Police found Fortinberry in defendant's bedroom and defendant would not let police enter the bedroom. Defendant was charged with Resisting an Officer and Obstructing an officer, and those charges are still pending against defendant.

Special Agent Trice testified that defendant is a member of the 4 Deuce Gang and, in fact, he is one of the founding members of the gang. Defendant has told police that the 4 Deuce Gang is associated with a Neighborhood Crips street gang. Following the search of Olzie Craven's residence on April 24, 2008, one of defendant's sisters confirmed that defendant was a member of the 4 Deuce Gang. Defendant's brother, Michael Craven, is also a member of the same gang. Special Agent Trice testified that defendant was shot in the arm on November 27, 2006, and

---

[7]     The government has contacted the Tulsa County District Attorney's office to clarify the basis for these charges and has learned that the charges stem from the same conduct for which defendant was indicted in federal court. The charge of Possession of Sawed-Off Shotgun against defendant in state court will be dismissed.

defendant told police that he was in the middle of gang fight between the Hoover Crips and the Neighborhood Crips.  She learned from Tulsa Police Department Detective Roger Smith that Michael Craven, defendant's brother, was shot in the arm and leg during a drive-by shooting on July 17, 2008 approximately two blocks from Olzie Craven's residence.

The government notes three other incidents that did not result in criminal charges against defendant, but that it believes are relevant to the Court's review of defendant's history and characteristics.  On January 10, 2007, defendant was in a sports utility vehicle ("SUV") near that Tulsa International Airport that was stopped by police for suspicious activity.  The SUV had been spotted near the airport within the past few days and police were investigating automobile thefts from the airport.  It does not appear that defendant was charged with a crime in connection with the stop.  On March 20, 2007, a neighbor called the police after hearing gunshots coming from the front yard of Olzie Craven's residence.  Police talked to defendant and he admitted that he lived at the residence, but no further information about this incident is available.  On March 30, 2008, police interviewed defendant and asked him if he was a member of the 4 Deuce Gang.  He responded that police finally identified him as a member of the correct gang.

Defendant's grandfather testified that defendant has lived with him for several years at the 42nd Street North address, but that defendant sometimes lives with his girlfriend, Shamelle Melton. He states that defendant's mother moved to Dallas, Texas to set up a business, but defendant wished to remain in school in Tulsa.  Defendant has not had any contact with his father for several years. Defendant obtained a job at Go Fit with assistance from his uncle and he has been working at Go Fit since early July 2008.  However, his employment history before that time is unclear and the evidence shows that he was not employed from April 24, 2008 through June 2008.  Defense counsel

presented evidence showing that  defendant has appeared at all required hearing in state court in recent months.  Jon Craven testified that defendant could return to work if the Court released him pending trial.  Jon Craven also testified that he wanted to help his nephew, but there is conflicting evidence concerning whether Jon Craven would permit defendant to move in with him.

The Court finds that defendant has a lengthy criminal history that includes involvement with gang members, firearms, violence against a police officer, and failure to appear at a court hearing. The Court notes defendant's evidence that he has appeared at hearing in state court during May and June 2008.  However, the evidence does not show that defendant has renounced his gang membership or made substantial efforts to maintain a stable home environment.  Although he is currently employed, he did not immediately seek employment after the April 24, 2008 search and he was unemployed until July 2008.  Defendant has stayed out of trouble for the last two months, but there is no evidence suggesting a wholesale change in lifestyle that would minimize the danger to the community.  The government correctly notes that the nature of defendant's crimes have escalated.  Defendant's substantial criminal history and gang membership strongly favor pretrial detention.

The Nature and Seriousness of the Danger to the Community and Others

The Court must evaluate the nature and seriousness of the danger to the community or any person if defendant is released.  The government bears the burden to establish defendant's "dangerousness to any other person or to the community by clear and convincing evidence." Cisneros, 328 F.3d at 616.  Defendant argues that he has not committed or been accused of a criminal offense for over two months and his family has taken steps to ensure that he will not be a danger to the community.  In this case, the Court find that the government has met its burden.  The

government has shown that defendant is gang member and he is charged with possessing a sawed-off shotgun. The Court will not repeat defendant's entire criminal history but notes that this evidence, particularly defendant's history of possessing firearms and refusing to cooperate with police, is highly relevant to the Court's consideration of his dangerousness. As discussed above, this type of weapon does not have a significant useful purpose except for personal protection or acts of violence. Special Agent Trice testified that, on July 17, 2008, defendant's brother was shot in the arm and leg while he was with a known gang member. This evidence suggests that gang activity has not subsided and it would be dangerous for the community, as well as the defendant personally, to be released into this environment. The government has cited the serious risk of gang retaliation by or against defendant, and the Court finds that this is a relevant consideration. Viewed in light of defendant's criminal history and his admission that he possessed a sawed-off shotgun, the Court finds that releasing defendant would pose a serious risk of harm to the community and other persons.

Flight Risk

The government has not specifically argued that defendant is a flight risk, but the Court finds that this is a relevant consideration. When determining whether a criminal defendant presents a flight risk, the Court should generally consider "(1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; and (3) the history and characteristics of the person." United States v. Trammel, 922 F. Supp. 527 (N.D. Okla. 1995). The government notes that there is a pending state charge against defendant for failure to appear. Defendant argues that he has appeared at all hearing in state court for more recent charges and there is no evidence suggesting that he will fail to appear in federal court if released on bond. However, application of the Trammel factors clearly shows that defendant is a flight risk. Defendant is charged with a

12

serious federal gun offense and faces a maximum sentence of ten years.  26 U.S.C. § 5871.  The government has presented substantial evidence supporting its decision to indict defendant. Defendant's history and characteristics show that he has previously missed a court appearance and this weighs heavily in the Court's consideration.  Given the seriousness of the charges against defendant, the weight of the evidence against him, and defendant's prior history of missing court dates, this significantly outweighs his argument that he is not a flight risk.

## IV.

Defendant argues that his grandfather is willing to take custody of him or, in the alternative, defendant can stay with his uncle at a more secure location.  He characterizes his previous convictions as non-violent and asserts that he has not been accused of any illegal conduct for over two months.  He claims that bond, along with other conditions such as electronic monitoring, will assure his appearance at court hearings and protect the community.  Defendant has provided exhibits from state court proceedings suggesting that the State of Oklahoma has not requested pretrial detention of defendant in any case and showing that he has made all of his court appearances for recent charges pending against him in state court.  Defendant's Exs. 1-3.

The government argues that defendant's lengthy criminal history shows that conditions of pretrial release imposed by state courts have had little or no effect on defendant's conduct.  Over the last few years, defendant has been staying with his grandfather and there is no evidence that defendant's grandfather has been able to curtail defendant's criminal conduct.  From Olzie Craven's testimony, it is abundantly clear that he cares for his grandson.  However, he states that he was unaware of his grandson's gang activity or possession of a firearm, and it is unclear if he was able to keep defendant from violating his conditions of pretrial release from state court.  Releasing

13

defendant to his grandfather's home would not protect the community, other persons, or defendant from harm, and this is not a satisfactory solution that would permit the Court to release defendant pending trial.   At the July 23, 2008 hearing, defendant's grandfather testified that Jon Craven, defendant's uncle, was willing to let defendant move into his apartment.   However, Jon Craven's testimony at the July 18, 2008 detention hearing suggests that he would not allow defendant to move in and he did not want to claim responsibility for monitoring defendant.   Even if the Court were to assume that Jon Craven would be willing to take third-party custody of defendant, this solution would not assure the safety of the community or provide any guarantee that defendant would appear at hearings.

The Court finds the government has carried its burden to show by clear and convincing evidence that no condition or combination of conditions will assure defendant's appearance at court hearings and the safety of the community or other persons.   Defendant argues that his behavior during the last two months indicates that releasing him will not endanger the community or any person, and his recent history suggests he will appear at court hearings.   Although this is a relevant consideration, the Court finds that defendant's recent conduct does not outweigh his lengthy criminal history, gang membership, and the severity and dangerousness of the alleged offense. Defendant has not presented any evidence that he has made any attempt to eliminate his involvement with the 4 Deuce Gang, and his brother's shooting suggests that gang activity is ongoing. Defendant's past conduct also suggest that conditions of pretrial release have not deterred him from engaging in criminal conduct.   While the Court notes that he has been employed for about two weeks at Go Fit, defendant has not presented evidence of stable income and home environment that rebuts the government's substantial evidence supporting its motion for pretrial detention.

**IT IS THEREFORE ORDERED** that the government's Motion for Revocation of Release Order and Memorandum in Support (Dkt. # 11) is **granted**, and defendant shall be detained pending trial of this matter.

**DATED** this 25th day of July, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT